Corrigan, C.J.
We granted leave to appeal to consider whether the “household exclusion” provision of MCL 500.3123 applies where a person owning damaged property is insured under a no-fault property protection policy that does not cover the vehicle that *144 person was operating at the time of the accident. We hold that the exclusion applies in those circumstances. We thus reverse the judgment of the Court of Appeals and remand this case to the circuit court for further proceedings.
I. UNDERLYING FACTS AND PROCEDURAL HISTORY
Ibrahim Mroue drove a rented Ryder truck into a bakery that he owned, causing damage to real and personal property. The Ryder truck was insured under a no-fault policy issued by defendant Old Republic Insurance Company. Plaintiff State Farm Fire and Casualty Company, the insurer of the real property, paid Mroue for the damages. As Mroue’s subrogee, State Farm filed this action seeking indemnification from Old Republic for the amount that State Farm had paid to Mroue.
A no-fault insurer’s liability to pay property protection benefits to its insured is subject to exceptions, including MCL 500.3123(l)(b), the “household exclusion,” which provides:
(1) Damage to the following kinds of property is excluded from property protection insurance benefits:
(b) Property owned by a person named in a property protection insurance policy, the person’s spouse or a relative of either domiciled in the same household, if the person named, the person’s spouse, or the relative was the owner, registrant, or operator of a vehicle involved in the motor vehicle accident out of which the property damage arose. [Emphasis added.]
*145 The circuit court granted summary disposition for Old Republic on the ground that Mroue, the owner of the real property, was a named insured in the Old Republic policy. Thus, since Mroue could not recover, State Farm could not recover as his subrogee.
The Court of Appeals reversed,[1] holding that the exclusion in MCL 500.3123(l)(b) did not apply because Mroue was not a named insured in the Old Republic policy. Old Republic appealed, and we remanded to the Court of Appeals for reconsideration. Our order directed the Court to consider whether MCL 500.3123(l)(b) excluded coverage only if a property protection insurance policy covered a “vehicle involved in the motor vehicle accident out of which the property damage arose,” or if the statute precluded coverage regardless of whether the vehicle insured under a property protection insurance policy was involved in the accident.[2]
On remand, the Court of Appeals again reversed. It concluded that the phrase “by a person named in a property protection insurance policy” refers to the policy on the vehicle or vehicles involved in the accident. The Court stated that the use of the article “a” was not significant and that the grammatical construction of the sentence dictated the use of the article “a.”[3]
H. STANDARD OF REVIEW
This case requires us to ascertain the meaning and proper application of MCL 500.3123(l)(b). Issues of *146 statutory interpretation are questions of law that we review de novo. Oade v Jackson Nat’l Life Ins Co, 465 Mich 244, 250; 632 NW2d 126 (2001); Donajkowski v Alpena Power Co, 460 Mich 243, 248; 596 NW2d 574 (1999).
HI. PRINCIPLES OF STATUTORY INTERPRETATION
When interpreting statutory language, we must ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute. Wickens v Oakwood Healthcare System, 465 Mich 53, 60; 631 NW2d 686 (2001). When the Legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself, and judicial construction is not permitted. Huggett v Dep’t of Natural Resources, 464 Mich 711, 717; 629 NW2d 915 (2001); Donajkowski, supra at 248. Because the proper role of the judiciary is to interpret and not to write the law, courts do not have authority to venture beyond the unambiguous text of a statute.
Courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory. Wickens, supra at 60. Further, we give undefined statutory terms their plain and ordinary meanings. Donajkowski, supra at 248-249; Oakland Co Rd Comm’rs v Michigan Prop & Cas Guaranty Ass’n, 456 Mich 590, 604; 575 NW2d 751 (1998).
IV. ANALYSIS
MCL 500.3123(l)(b) excludes property damage from no-fault property protection coverage if the property owner, the person’s spouse, or a relative of *147 either residing in the same household, is “named in a property protection insurance policy” and was “the owner, registrant, or operator of a vehicle involved” in the accident. Contrary to the Court of Appeals decision and the dissent’s contention, the statute does not require that the individual be named in a property protection insurance policy covering “a vehicle involved in the motor vehicle accident out of which the property damage arose.” 242 Mich App 109. Rather, the plain meaning of MCL 500.3123(l)(b) indicates that if Mroue was named in a property protection insurance policy and was the “operator of a vehicle involved” in the accident, coverage for damage to his property would be excluded. Whether the no-fault policy covered a vehicle involved in the accident is not relevant under the plain language of the statute. Therefore, if Mroue was named in a no-fault policy covering, for example, a personal vehicle, the statute would exclude property protection coverage. Stated another way, MCL 500.3123(l)(b) allows a party in Mroue’s circumstances to recover from the rental vehicle’s insurer only if he was not named in a no-fault policy.
Like the Court of Appeals, our dissenting colleagues would essentially rewrite the statutory phrase “named in a property protection insurance policy” to state, “named in the property protection insurance policy.” Thus, the dissent does not give effect to the distinct meanings of the words “a” and “the.” In Robinson v Detroit, 462 Mich 439, 461-462; 613 NW2d 307 (2000), we overruled Dedes v Asch, 446 Mich 99; 521 NW2d 488 (1994), an earlier case that had misconstrued “the” to mean “a.” We explained in Robinson that
*148 (1) common English usage,
(2) the rules of statutory construction enacted by our Legislature,[4] and
(3) the assumption of legislator competence and comprehension that all courts should apply to acts of the Legislature,
make clear that a difference exists between the indefinite article “a” and the definite article “the.”[5] We presume that the Legislature understood the distinct meanings of these terms. We are not free to conflate their meanings.
The Court of Appeals and the dissent’s reasoning that the grammatical construction of the sentence in the statute mandated the use of “a” instead of “the” is flawed. The Legislature chose the specific construction of the sentence and was not bound by any particular language or structure. If the Legislature had intended to use the definite article “the” instead of the indefinite article “a,” it could have simply changed the construction of the sentence. It is untenable that the Legislature intended a meaning other than that *149 plainly expressed because it somehow felt itself confined to the particular grammatical construction utilized.
Our dissenting colleagues further contend, without citing any authority, that the phrase “a person named in a . . . policy” is clearly linked to the subsequent phrase “[the] operator of a vehicle involved in the motor vehicle accident.” They contend that the text would be rendered mere surplusage if the above phrases were not linked. The phrase “involved in the motor vehicle accident,” however, follows the term “vehicle” and clearly modifies that term. Nothing in the text of the statute suggests that the phrase “involved in the motor vehicle accident” modifies the phrase “a property protection insurance policy.” The dissent essentially rewrites the statute by reading the language “a property protection insurance policy” as stating “a property protection insurance policy covering a vehicle involved in the motor vehicle accident.”
It is not the role of the judiciary to second-guess the wisdom of a legislative policy choice; our constitutional obligation is to interpret—not to rewrite—the law. The Legislature apparently determined that where the household exclusion applies, damaged property should be covered, if at all, by a form of insurance other than a mandatory no-fault policy. Not only does our interpretation of the statute comport with the plain language of the text, but it is also consistent with the legislative intent that may reasonably be inferred from the text, i.e., to preclude a person who damages his own property from collecting property protection insurance benefits under that person’s no-fault policy. In this case, the property damage clearly would have been excluded if Mroue had been *150 driving his own vehicle. The result should not be different merely because he was driving a rented one.
We acknowledge that our interpretation of the statute would allow a party in Mroue’s circumstances to recover from an insurer in Old Republic’s circumstances where that party does not have another no-fault policy, but would prevent recovery where he does. While such a factor might be considered fortuitous, the plain language of the statute mandates this interpretation.
Further, perhaps the Legislature chose to exclude these risks from no-fault coverage to reduce consumer premium costs for this mandatory insurance.[6] For example, MCL 500.3123(l)(a) also excludes from property protection insurance benefits:
Vehicles and their contents, including traders, operated or designed for operation upon a public highway by power other than muscular power, unless the vehicle is parked in a manner as not to cause unreasonable risk of the damage which occurred.
Therefore, a driver must obtain motor vehicle collision coverage to collect benefits for property damage to the driver’s own vehicle. By exempting coverage for property that can be insured through policies *151 other than a mandatory no-fault policy, the Legislature has, consistent with its ongoing efforts over the years,[7] attempted to make such mandatory insurance affordable.
V. CONCLUSION
In these circumstances, the plain language of MCL 500.3123(l)(b) limits no-fault property protection benefits to persons not named in a no-fault property protection policy. Because this aspect of the statute was not considered in the circuit court, the record was not developed regarding whether Mroue was named in a no-fault property protection policy other than the policy covering the rental truck. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the Wayne Circuit Court for further proceedings consistent with this opinion.
Weaver, Taylor, Young, and Markman, JJ., concurred with Corrigan, C.J.

 234 Mich App 465; 595 NW2d 149 (1999).

 461 Mich 928 (1999).

 242 Mich App 105, 109; 617 NW2d 715 (2000).

 See, e.g., MCL 8.3a.

 The following passage from Hagerman v Gencorp Automotive, 457 Mich 720, 753-754; 579 NW2d 347 (1998) (Taylor, J., dissenting), reflects the heart of the Robinson position:
Traditionally in our law, to say nothing of our classrooms, we have recognized the difference between “the” and “a.” “The” is defined as “definite article. 1. (used, esp. before a noun, with a specifying or particularizing effect, as opposed to the indefinite article or generalizing force of the indefinite article a or an). . ..” Random House Webster’s College Dictionary (1997). Further, we must follow these distinctions between “a” and “the” as the Legislature has directed that “[a]ll words and phrases shall be construed and understood according to the common and approved usage of the language . . . .” MCL 8.3a. Moreover, there is no indication that the words “the” and “a” in common usage meant something different at the time this statute was enacted .... [Emphasis in original.]

 In Michigan Ed Emp Mut Ins Co v Morris, 460 Mich 180, 194; 596 NW2d 142 (1999), this Court recognized the Legislature’s goal of rendering mandatory no-fault insurance affordable:
“The no-fault insurance act was a radical restructuring of the rights and liabilities of motorists. Through comprehensive action, the Legislature sought to accomplish the goal of providing an equitable and prompt method of redressing injuries in a way which made the mandatory insurance coverage affordable to aU motorists.” [Quoting Tebo v Havlik, 418 Mich 350, 366; 343 NW2d 181 (1984) (emphasis added).]

 The Legislature made a similar effort to reduce mandatory insurance premiums when it revised the original no-fault scheme, 1972 PA 294, seven years after its enactment. The essential insurance act, 1979 PA 145, was designed, inter alia, to permit certain costly coverages to be excluded by insurers and thus to contain premium costs.