# Order

Michigan Supreme Court
Lansing, Michigan

April 6, 2012

3/January 2012

142670-1

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra,
Justices

ATTORNEY GENERAL,
   Plaintiff-Appellant,

v

BLUE CROSS BLUE SHIELD OF MICHIGAN,
   Defendant-Appellee.

SC: 142670
COA: 290167
Ingham CC: 08-000917-CZ

_____/

ATTORNEY GENERAL,
   Plaintiff-Appellant,

v

BLUE CROSS BLUE SHIELD OF MICHIGAN,
   Defendant-Appellee,
and

OFFICE OF FINANCIAL AND INSURANCE
REGULATION and COMMISSIONER OF THE
OFFICE OF FINANCIAL AND INSURANCE
REGULATION,
   Respondents.

SC: 142671
COA: 295750
Ingham CC: 08-000952-CZ

_____/

On order of the Court, leave to appeal having been granted and the briefs and oral arguments of the parties having been considered by the Court, we VACATE our order of July 13, 2011. The application for leave to appeal the December 7, 2010 judgment of the Court of Appeals is DENIED, because we are no longer persuaded that the question presented should be reviewed by this Court.

MARILYN KELLY, J. (*dissenting*).

I agree with Justice MARKMAN that the Court of Appeals erred by affirming the trial court's decision. However, I reach my conclusion using a different legal analysis.

I would reverse both the Court of Appeals and the trial court's decisions and find Blue Cross Blue Shield of Michigan (BCBSM) in violation of MCL 550.1207(1)(o). That section allows BCBSM to have ownership and other interests in "domestic, foreign, or alien insurers" as long as the criteria it lists are met.[1] The critical limitation is in MCL 550.1207(1)(o)(*iv*). This allows BCBSM to have an interest in domestic, foreign, or alien insurers if the interest "will not result in [BSBSM] owning or controlling part or all of the insurer . . . and the insurer being acquired is only authorized to sell disability insurance . . . ."[2]

There is no dispute among the parties or in the lower court opinions that BCBSM could not have directly acquired the three foreign insurers. At issue is whether it could lawfully acquire the insurers indirectly. I believe it could not. I base that conclusion on MCL 550.1207(1)(o)(*iii*), which states that "[a]s used in this subparagraph and subparagraph (*iv*), 'control' means that term as defined [in MCL 500.115] of the insurance code . . . ." I rely also on MCL 500.115(b)(*i*), which defines "control" as "possession, direct or *indirect*, of the power to direct or cause the direction of the management and policies of a person . . . . Control is presumed to exist if any person . . . directly or *indirectly*, owns . . . 10% or more of the voting securities of any other person . . . ." (Emphasis added.) Under MCL 500.114, "person" includes an insurer.

It is uncontested that through its 100 percent ownership of the Accident Fund, BCBSM indirectly owns more than 10 percent of the voting securities of the three foreign insurers. The BCBSM organization chart shows that BCBSM owns 100 percent of the voting securities of the Accident Fund, which owns 100% of the voting securities of the three foreign insurers. BCBSM's 2009 and 2010 consolidated financial statements list the three foreign insurers as "purchased" subsidiaries. Given that BCBSM indirectly owns 100 percent of the foreign insurers, it must be presumed that it controls them.

The trial court reasoned that nothing in MCL 550.1207(1)(o) barred BCBSM's subsidiaries from purchasing insurance companies. This simply defies reason. That is exactly what MCL 550.1207(1)(o) does by including "indirect" ownership in the definition of "control." In the context of corporations, a subsidiary is, by definition, a corporation "in which a parent corporation has a controlling share."[3] Since BCBSM has not just a "controlling share," but 100 percent ownership of the Accident Fund, it

---

[1] MCL 550.1207(1)(o)(*i*) to (*iv*).

[2] MCL 550.1207(1)(o)(*iv*).

[3] Black's Law Dictionary (8th ed) , p 368.

indirectly controls the foreign insurers. The trial court itself stated that BCBSM "does not directly own, and did not directly acquire or purchase, the insurance companies. If anything, [BCBSM] only *indirectly* owns, and only *indirectly* purchased or acquired, the companies."[4] This is simply not allowed under MCL 550.1207(1)(o) .

To put the nail in the coffin, MCL 550.1207(1)(o)(*iv*) also limits the insurance companies BCBSM is allowed to have an interest in to insurers "only authorized to sell disability insurance." The three foreign insurers acquired are workers' compensation insurers. This is not a form of disability insurance; it is a form of casualty insurance.[5]

BCBSM violated the restrictions in MCL 550.1207(1)(o) and should be required to divest itself of its interest in the three foreign insurers. For that reason, I respectfully dissent.

MARKMAN, J. (*dissenting*).

The facts of this case are as straightforward as the statutory interpretation that follows. In 1939, Blue Cross/Blue Shield of Michigan (BCBSM), a nonprofit "health care corporation," was established by the Michigan Legislature for the purpose of providing broad health care protection to the people of Michigan. As a "health care corporation," BCBSM is generally prohibited from acquiring any interest in "domestic, foreign, or alien insurers . . . ." MCL 550.1207(1)(o). However, in 1993, the Legislature amended the Nonprofit Health Care Corporation Reform Act ("Act"), MCL 550.1101 *et seq*., and permitted BCBSM to form a "domestic stock insurance company" for the purpose of "acquiring, owning, and operating the state accident fund," a for-profit workers' compensation carrier. MCL 550.1207(1)(x). Pursuant to the Act, BCBSM formed the Accident Fund as a "domestic stock insurance company," which then acquired the state accident fund. Then, in 2005, the Accident Fund entered into a series of transactions that resulted in the acquisition of 100 percent of the common shares of three foreign workers' compensation insurers. In the present litigation, the Attorney General challenges the validity of these acquisitions. The lower courts held that the Attorney General failed to state a claim upon which relief could be granted, and the majority here denies leave to appeal. Because, in my judgment, the Accident Fund as a wholly owned subsidiary of BCBSM lacked the authority to engage in these transactions, I respectfully dissent.

---

[4] *Attorney General v Blue Cross Blue Shield of Mich*, order of the Ingham Circuit Court granting defendant's motion for reconsideration, entered January 13, 2009 (Case No. 08-917-CZ). (Emphasis added).

[5] MCL 500.624(1)(b).

(1) MCL 550.1207(1)(o) generally prohibits BCBSM, as a "health care corporation," from acquiring an interest in "domestic, foreign, or alien insurers."

(2) However, the Act provides that, notwithstanding the general prohibition in subsection (1)(o) against BCBSM acquiring an interest in "domestic, foreign, or alien insurers," BCBSM may "establish, own, and operate a domestic stock insurance company only for the purpose of acquiring, owning, and operating the state accident fund pursuant to chapter 51 of the insurance code of 1956, 1956 PA 218, MCL 500.5100 to 500.5114 . . . ." MCL 550.1207(1)(x).

(3) The Accident Fund, as the "domestic stock insurance company" established by BCBSM under subsection (1)(x), derives its authority from, and is governed by, this provision, a point acknowledged by BCBSM in its brief on appeal. See Appellee's Brief at 28 n 28 (noting that, in contrast to other provisions of MCL 550.1207(1) that do not apply to the Accident Fund, MCL 550.1207(1)(x) "substantively and markedly" limits its activities).

(4) Subsection (1)(x), by using the modifier "*only*," confines the permissible business activities of the Accident Fund when it is "own[ed] and operate[d]" by BCBSM to "acquiring, owning, and operating the state accident fund pursuant to chapter 51 of the insurance code of 1956 . . . ."

(5) The transactions at issue are not authorized by subsection (1)(x) because the Accident Fund's acquisition of foreign insurance companies constitutes an act falling outside the "acquiring, owning, [or] operating the state accident fund." Rather, it is an act that expands the scope of its business activities beyond subsection (1)(x).

(6) Further, no other provision in chapter 51 of the Insurance Code provides authority for the Accident Fund to acquire additional insurers. Thus, the transactions were beyond the Fund's authority.

(7) Subparagraph (*i*) of subsection (1)(x) permits the Accident Fund to transact specified types of insurance "directly or indirectly." The Court of Appeals infers from this language that the Fund was permitted to acquire the foreign insurance companies. However, to accept this inference would be in contravention of established principles of interpretation. Subsection (1)(x) limits the permissible scope of the Fund's activities to "acquiring, owning, and operating the state accident fund pursuant to chapter 51 of the insurance code . . . ." By immediately thereafter using the phrase "so long as all of the following are met," subsection (1)(x) then places *additional* limitations on the Fund's

operations through six subparagraphs.[6] Rather, however, than reading these additional limitations *in the context* of the overarching limitation found in subsection (1)(x), the Court of Appeals instead reads the additional limitations *out of context* by disregarding the primary limitation itself. The failure to give full effect to this sentence renders it altogether nugatory. And because "[c]ourts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory," *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146 (2002), the Court of Appeals' interpretation is in error.

(8) Nor does MCL 500.1305(1), which provides authority for a "domestic insurer" to "acquire 1 or more subsidiaries," provide authority for the Accident Fund to engage in the acquisition of the three foreign insurance companies. The Fund, as a legislatively authorized entity, is not an ordinary "domestic stock insurance company." The enabling provision that authorized the Fund's formation defined the scope of its business activities. That is, under MCL 550.1207(1)(x), the Fund may *only* "acquir[e], own[], and operat[e] the state accident fund pursuant to chapter 51 of the insurance code of 1956, 1956 PA 218, MCL 500.5100 to 500.5114 . . . ." MCL 500.1305(1), which provides authority for an ordinary domestic insurer to acquire subsidiaries, is found in chapter 13 of the Insurance Code, not in chapter 51.

(9) Accordingly, because MCL 500.1305(1) is not found in *chapter 51* of the Insurance Code, it does not govern the Fund's operation of the state accident fund. In short, § 1305(1) does not provide authority for the Fund to "acquire 1 or more subsidiaries," nor does any other provision of law that has been identified.

In conclusion, because the Accident Fund as a wholly owned subsidiary of BCBSM, in my judgment, lacked the authority to engage in the acquisition of the three foreign insurance companies, the trial court's determination that the Attorney General failed to state a claim upon which relief could be granted, and the Court of Appeals' affirmance, are both in error. Accordingly, I dissent from the majority's denial of leave to appeal and would instead reverse the judgment and remand this matter to the trial court for further proceedings.

---

[6] That the Legislature specifically intended subsection (1)(x) to govern and confine the permissible scope of *the Accident Fund's* business activities as a wholly owned subsidiary of BCBSM is further evidenced by these subparagraphs. For example, subparagraph (*i*) limits "the insurer" to transacting only specified types of insurance such as worker's compensation insurance.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

April 6, 2012

t0403

_____
Clerk