# Order

**Michigan Supreme Court**
**Lansing, Michigan**

November 1, 2013

145750

In re Application of The Detroit Edison Company
to Increase Rates

_____

ASSOCIATION OF BUSINESSES ADVOCATING
TARIFF EQUITY,
        Appellant,

v

MICHIGAN PUBLIC SERVICE COMMISSION,
        Appellee,
and

THE DETROIT EDISON COMPANY,
        Petitioner-Appellee.

_____/

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano,
Justices

SC: 145750
COA: 302110
MPSC No: 00-016384

On order of the Court, leave to appeal having been granted, and the briefs and oral arguments of the parties having been considered by the Court, we AFFIRM the result reached in the July 26, 2012 judgment of the Court of Appeals. The Michigan Public Service Commission (PSC) was not obligated by MCL 460.6a(1) to order a refund based on the actual amount that each customer overpaid, and the PSC did not abuse its discretion in approving the refund methodology at issue. We note, however, that the Court of Appeals erred by concluding that MCL 460.6a(1) is ambiguous because it is subject to reasonable but differing interpretations. The standard for determining ambiguity is whether a provision of the law "'irreconcilably conflict[s]' with another provision . . . or . . . is *equally* susceptible to more than a single meaning." See *Lansing Mayor v Pub Serv Comm*, 470 Mich 154, 166 (2004), and *Klapp v United Ins Group Agency*, 468 Mich 459, 467 (2003).

CAVANAGH, J. (*concurring*).

I concur in the order affirming the judgment of the Court of Appeals. However, I write separately to note that I continue to adhere to my past position regarding the standard for determining ambiguity. See *Lansing Mayor v Pub Serv Comm*, 470 Mich 154, 173-185 (2004) (CAVANAGH, J., dissenting).

ZAHRA, J. (*dissenting*).

I respectfully dissent from the Court's decision to affirm the judgment of the Court of Appeals. In my view, the Michigan Public Service Commission (PSC) approved a

refund methodology contrary to the language of MCL 460.6a(1).  Of course, this Court owes respectful consideration to an agency's interpretation of a statute that it is charged with administering.[1]  But that interpretation does not bind the judiciary, and this Court must step in when the agency's interpretation conflicts with the statutory language.  I would therefore reverse the Court of Appeals' decision that deferred to the PSC's erroneous interpretation.

MCL 460.6a(1) governs electric rate changes, including the procedure for effectuating a temporary rate increase:

> A gas or electric utility shall not increase its rates and charges or alter, change, or amend any rate or rate schedules, the effect of which will be to increase the cost of services to its customers, without first receiving commission approval as provided in this section. . . .  If the commission has not issued an order within 180 days of the filing of a complete application, the utility may implement up to the amount of the proposed annual rate request through equal percentage increases or decreases applied to all base rates. . . .  *If a utility implements increased rates or charges under this subsection before the commission issues a final order, that utility shall refund to customers, with interest, any portion of the total revenues collected through application of the equal percentage increase that exceed the total that would have been produced by the rates or charges subsequently ordered by the commission in its final order.  The commission shall allocate any refund required by this section among primary customers based upon their pro rata share of the total revenue collected through the applicable increase, and among secondary and residential customers in a manner to be determined by the commission.*  [Emphasis added.]

In 2009, relying on MCL 460.6a(1), Detroit Edison applied for an increase in rates of $378 million.  When the PSC failed to issue an order within 180 days, Detroit Edison elected to self-implement an increase of $280 million.  But the PSC ultimately approved an increase of only $217,392,000, so MCL 460.6a(1) required Detroit Edison to refund the excess revenue that it had collected—$26,872,231 after interest.  Detroit Edison proposed to allocate this refund among its customer classes on the basis of each class's share of total revenue.  The refund would then be allocated within each class to individual customers using a formula created by the PSC and would be provided as a credit on a future bill.  The Association of Businesses Advocating Tariff Equity (ABATE) objected to this methodology as applied to primary customers on the basis that the plain language of MCL 460.6a(1) required a refund based on the exact amount each primary customer

---

[1] *In re Complaint of Rovas*, 482 Mich 90, 103; 754 NW2d 259 (2008).

had paid.[2]  The PSC rejected ABATE's contention, concluding that an allocation based on rate class complied with the statute and that calculating the exact refund amount for each primary customer would be overly burdensome and costly.

The Court of Appeals deferred to the PSC's decision because it determined that MCL 460.6a(1) was ambiguous and "cogent reasons" existed to support the PSC's interpretation.[3]  In my view, the Court of Appeals erred twice.  First, as stated in the Court's order today, the Court of Appeals applied the wrong standard for discerning ambiguity in a statute.  Second, no matter what standard of ambiguity is used, MCL 460.6a(1) unambiguously requires a utility to refund a precise amount to primary customers that overpaid and curtails the PSC's discretion to fashion an alternative refund methodology.  Thus, the PSC abused its discretion by approving a refund methodology that is contrary to the statute's language.

The Legislature's carefully chosen language supports my understanding of the statute.  First, the Legislature said that any refund should be divided "among" the primary customers.  The appropriate definition of "among" in this context is "with a share for each of[.]"[4]  Thus, rather than the whole class being allocated a share of the refund, each primary customer is entitled to a particular share of the refund.  The Legislature also instructed the PSC how to calculate each primary customer's refund:  "based upon their pro rata share of the total revenue collected through the applicable increase . . . ."[5]  The refund is a sum certain, not an indeterminate amount at the PSC's discretion.  Each primary customer must receive a percentage of the refund required by MCL 460.6a(1) equal to the percentage of the total revenue generated by that primary customer during the self-implementation period, plus interest.  Yet the methodology that the PSC approved in this case would result in refunds that exceed or fall short of the precise amounts that the statute requires.

Traditional precepts of statutory interpretation also support my reading of the statute.  Courts must strive to interpret statutes in a way that gives effect to every word and phrase and avoids rendering any part of the statute surplusage or nugatory.[6]  But the PSC's interpretation of MCL 460.6a(1), which today receives the Court's stamp of

---

[2] A "primary customer" is a high-voltage customer that takes power directly from Detroit Edison's primary lines.

[3] *In re Detroit Edison Co Application*, 297 Mich App 377, 385-386; 823 NW2d 433 (2012).

[4] *Random House Webster's College Dictionary* (2005).

[5] MCL 460.6a(1).

[6] *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002).

approval, renders a portion of the statute pure surplusage. Under the PSC's interpretation, once a utility allocates a block of the refund to the class of primary customers, any further distribution of the refund is done pursuant to the PSC's discretion. This grant of discretion, the PSC suggests, is implicit in the statute's silence on how to divide the primary customer class's portion of the refund. But if legislative silence conferred carte blanche on the PSC, then the Legislature would not have had any reason to state in the very next clause that the refund to secondary and residential customers should be performed "in a manner to be determined by the commission."[7] The PSC's interpretation renders this portion of the statute pure surplusage because, according to the PSC, it would have had discretion over the secondary and residential customers' refunds even if the Legislature had not said so. Put another way, the PSC's interpretation holds that it has discretion over the allocation of the refunds to all three customer classes even though the Legislature explicitly granted it discretion over the refunds to two classes and was silent regarding the third. My understanding reaches the much more logical conclusion that the PSC has discretion over the refunds to the two customer classes for which discretion was expressly granted and no discretion over the customer class for which the Legislature provided a precise formula to calculate the refund for each customer. Only my interpretation gives every word meaning.

Finally, I find unavailing the PSC's argument that providing exact refunds to primary customers would be too difficult and costly for Detroit Edison. While providing such a refund may be difficult, the statute contains no indication that the Legislature intended to make it easy for utilities to self-implement rate increases. And indeed, public policy would seem to indicate that precisely the opposite is true. When a utility makes the decision to self-implement a rate increase on its customers, it runs a risk that the final approved rate might be lower than its self-implemented rate. And there is no reason to believe that the Legislature would write the statute in a way that would alleviate that risk. The Legislature's carefully crafted procedure is not concerned merely with preventing a windfall to the utilities; it is designed to protect the customers—particularly the primary customers who buy the most power. Under the PSC's interpretation, on the other hand, utilities would have an incentive to self-implement rates as fast and as high as possible to the detriment of the customers. Then, if the final rate is as high as the self-implemented rate, the utility reaps the benefit of having charged a higher rate for a longer period of

---

[7] MCL 460.6a(1).

time, and if the final rate is lower, there is no consequence to the utility.  The Legislature would not have intentionally created incentives so damaging to consumers.

While an agency's interpretation of a statute that it is charged with executing is generally entitled to respectful consideration, this Court is ultimately tasked with enforcing the Legislature's language.  Giving respectful consideration to the PSC's interpretation of the statute, I nonetheless conclude that the words the Legislature chose to use in MCL 460.6a(1) do not support the PSC's interpretation of the statute. Accordingly, I respectfully dissent.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

November 1, 2013



Clerk

t1029