# STATE OF MICHIGAN

# COURT OF APPEALS

---

MICHIGAN ASSOCIATION OF HOME
BUILDERS, ASSOCIATED BUILDERS AND
CONTRACTORS OF MICHIGAN, and
MICHIGAN PLUMBING AND MECHANICAL
CONTRACTOR ASSOCIATION,

Plaintiffs-Appellants,

v

CITY OF TROY,

Defendant-Appellee.

UNPUBLISHED
September 28, 2017

No. 331708
Oakland Circuit Court
LC No. 2010-115620-CZ

---

Before: O'BRIEN, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

JANSEN, J. (*dissenting*)

Plaintiffs allege that "significant monthly surpluses" of fees generated under defendant's contractual arrangement with SAFEbuilt and deposited into defendant's general fund evidence a violation of both MCL 125.1522(1) and the Headlee Amendment, Const 1963, art 9, § 31. The trial court granted a motion for summary disposition pursuant to MCR 2.116(C)(10) after finding that, as a matter of law, (1) defendant's practice of depositing fee surplus funds into the general fund for past shortfalls does not violate MCL 125.1522(1), and (2) defendant's building department charges, including any surplus, constitute fees rather than taxes. The majority adopts the trial court's reasoning and affirms. Because I do not agree that defendant's practice of raising revenue with building department charges comports with MCL 125.1522(1), I respectfully dissent.

In its entirety, MCL 125.1522(1) provides:

The legislative body of a governmental subdivision *shall establish reasonable fees* to be charged by the governmental subdivision *for acts and services performed* by the enforcing agency or construction board of appeals under this act, *which fees shall be intended to bear a reasonable relation to the cost, including overhead, to the governmental subdivision of the acts and services*, including, without limitation, those services and acts as, in case of an enforcing agency, issuance of building permits, examination of plans and specifications,

-1-

inspection of construction undertaken pursuant to a building permit, and the issuance of certificates of use and occupancy, and, in case of a board of appeals, hearing appeals in accordance with this act. The enforcing agency shall collect the fees established under this subsection. *The legislative body of a governmental subdivision shall only use fees generated under this section for the operation of the enforcing agency or the construction board of appeals, or both, and shall not use the fees for any other purpose.* [Emphasis added.]

This Court's role in interpreting a statute is to, as closely as possible, decipher and carry out the expressed legislative intent. *McCormick v Carrier*, 487 Mich 180, 191; 795 NW2d 517 (2010). The clearest indicator of Legislative intent, and the initial focus of any statutory analysis, is the plain language of the statute itself. *Id*. at 191-192. "We interpret the words in the statute in light of their ordinary meaning and their context within the statute and read them harmoniously to give effect to the statute as a whole." *Johnson v Recca*, 492 Mich 169, 177; 821 NW2d 520 (2012) (quotation marks, alterations, and citation omitted). "In doing so, courts 'must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory.' " *Id*., quoting *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002).

I believe that on its face, MCL 125.1522(1) reflects intent to limit building department fees imposed to the cost, within reason but as closely as possible, to the department of providing those particular services. The statute allows the building department to cover the cost of providing the acts and services mandated under the CCA, consistent with the long-established principle that a fee must be related to the cost of the actual goods or services provided. The statute is intended to provide a mechanism through which a city may fully fund its building department, but not to generate additional revenue.

To allow defendant's building department to run deficits by choice and then overcharge future users to make up for those deficits undermines the purpose of the statute, which is to ensure a direct and reasonable relationship between the acts and services performed by the department and the cost of providing those services to each individual served. Although the statute allows defendant to apply an incidental surplus to the costs of operating the building department, it does not allow defendant to *create* a surplus in order to recoup what defendant contends was a deficit from prior years.

Although defendant concedes that it has retained SAFEbuilt to provide the acts and services of its building department, it charges fees to cover the cost of compensating SAFEbuilt with an intentional 20-25% surplus. Defendant claims that some of these funds are then used to cover indirect costs of operating the building department, such as covering 40% of the building code official's salary and maintaining the building it leases to SAFEbuilt. However, I believe that a 20-25% surplus is unreasonable on its face. Indeed, defendant used its building department fees to raise $269,483 in surplus funds in 2012, $488,922 in 2013, and $325,512 in 2014, for a total of $1,083,917 deposited directly into defendant's general fund over the course of only three years. This "surplus" is not negligible. Common sense indicates that it is not incidental. The amount of surplus generated, on its own, indicates that defendant is engaged in a revenue-raising venture. Regardless of whether it is raising the revenue to cover alleged prior

shortfalls, or any other cost of operating the building department, such an endeavor violates the clear meaning of MCL 125.1522(1).

Also telling is what the record does *not* include. The record is suspiciously devoid of any building department budgets, despite the fact that at least one building department employee testified that detailed building department budgets were scrupulously maintained. The record contains no evidence to support defendant's claim that it actually ran a deficit during any previous budget years, or to explain what expenses the building department incurred during those years to create a more than $6 million shortfall. As proof that it suffered a deficit, defendant relies solely on past Comprehensive Annual Financial Reports (CAFRs) which, in describing defendant's general revenue and expenses, list a total amount for "[c]urrent year building permit revenue" and a total amount of "[r]elated expenses" before reporting the building department's yearly net shortfall. As their name implies, these CAFRs simply *report* a building department deficit, they do not prove that one actually existed. Defendant processes all of its financial transactions through one general fund. Without a specific building department budget, it is not clear whether and how defendant incurred such massive deficits. And although the majority suggests, in a footnote, that there is no evidence to "contradict testimony elicited on behalf of defendant regarding *its methods of accounting* and asserting the accurate representation of the fees and service costs collected and expenditures incurred in the operation of the Building Department," it conspicuously fails to mention that the record contains no such representation of fees and expenditures.

Defendant concedes that it made a management decision to subsidize its building department during the period of alleged deficit with general funds and keep building department fees low during that time period. Perhaps defendant's choice was pragmatic, but it was a choice. It clearly chose *not* to charge fees reasonably related to the cost of performing services during those years, and it now attempts to shuffle funds back into its general account through the back door of operational "surplus." The statute does not allow defendant to charge current payers and permit applicants more than what is reasonable in order to make up for losses it chose to incur by failing to charge previous permit applicants appropriately under the statute. To hold that under MCL 125.1522(1), a city may engage in such creative budgeting would create a poor precedent. Under the majority's interpretation of the statute, a city might permissibly choose to create a shortfall in any given year and unfairly charge unreasonable rates in subsequent years, completely defeating the goal of ensuring that each individual fee-payer pays for the acts and services he or she is provided.

While I believe defendant's practice of depositing excess surplus funds into its general fund to repay alleged prior shortfalls constitutes a clear violation of MCL 125.1522(1), and therefore eliminates the need for this Court to address the constitutional issue presented, I believe that defendant's actions may also have implications under the Headlee Amendment. I disagree with the majority's conclusion that the fees charged by defendant are related to or associated with the provision of specific services provided by the building department. Rather, for the reasons discussed, I believe that defendant's sizeable surplus was the direct result of defendant's attempt to raise revenue by charging excessive fees. Further, I would argue that while the person paying a reasonable building department fee receives a corresponding benefit "not generally shared by other members of society," *Bolt*, 459 Mich at 164, it is the public that receives the benefit of the *excess* funds generated by defendant's revenue-generating practice. These excess

funds, which are not reasonably related to a regulatory purpose or the cost of services provided to their payer, are deposited into defendant's general fund and used for the benefit of all residents. Because I am unconvinced that defendant's building department fees are solely regulatory, rather than revenue-generating, I believe questions remain regarding whether defendant's fee surplus constitutes a tax under the Amendment.

I would reverse.


/s/ Kathleen Jansen