# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Guardianship/Conservatorship of HAROLD WILLIAM GERSTLER.

---

JANICE ROWLAND and TAMMY DYKSTRA, Guardian/Conservator of HAROLD WILLIAM GERSTLER,

      Appellees,

v

ANGELEE GERSTLER,

      Appellant.

FOR PUBLICATION
June 5, 2018
9:00 a.m.

No. 338935
Allegan Probate Court
LC Nos. 16-060110-CA;
          16-060111-GA

---

Before: GLEICHER, P.J., and M. J. KELLY and CAMERON, JJ.

GLEICHER, P.J.

The issue presented is whether the probate court erred by appointing a public guardian and conservator for Harold Gerstler, bypassing Gerstler's daughter, Angelee Gerstler. The Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*., establishes an order of priority that must be followed when a probate court selects a guardian and conservator for a protected person. MCL 700.5313; MCL 700.5409. Angelee was at the top of the list, and no evidence suggests that she was incompetent to serve or otherwise unsuitable for the position. The probate court failed to make any factual findings in this regard, however, and refused to apply the statutory priority framework. We vacate the guardianship and conservatorship orders and remand for further proceedings consistent with this opinion.

I

Harold Gerstler is 75 years old and suffers from dementia. He and his wife, Penni, lived for many years in Texas while Harold worked as a mechanical engineer for a steel company. He and Penni retired to California. Angelee Gerstler is Harold's adult daughter and only surviving child. Angelee lives in a home in Texas that Harold and Penni helped her purchase. There is no dispute about Harold's current need for a guardian and conservator.

-1-

Janice Rowland is Harold's sister and a resident of Allegan County, Michigan. Before the events giving rise to this case, Harold had no ties to Michigan other than the presence of Rowland and another sister.

In May 2013, Harold and Penni signed California "statutory durable powers of attorney" granting Angelee the power to carry out real estate transactions on their behalf. Two years later, Harold signed another California statutory durable power of attorney empowering Angelee to engage in his real estate transactions and "banking and other financial institution transactions."

In early 2016, a neurologist determined that Harold suffered from Alzheimer's disease. Penni died that same year, on October 4, 2016.

Shortly before Penni's death, Rowland brought Harold to Michigan. The circumstances surrounding this trip are unclear. On October 11, 2016, one week after Penni died, Rowland persuaded Harold to sign a power of attorney in Rowland's favor. That document enabled Rowland to control Harold's finances and estate. A short time later, Rowland sent Angelee this text message:

> Angie, this is your Aunt Janice' [sic]. As you may know by now, I have durable and medical power of attorney for your dad's money and estate. I want you to be comfortable with this, knowing that this is not for my benefit. This is for your dad's care. The money transfer from Texas to his Raymond James account here will be completed by the end of today. I need to put you down as beneficiary and therefore I need your Social Security number. *I have your phone number and address already.* I have a meeting with the Financial people tomorrow and would like to finish the paperwork. Please give me a call. . . . [Emphasis added.]

Apparently, Angelee balked at these demands.

On November 4, 2016, Rowland filed in California a "Request for Elder or Dependent Adult Abuse Restraining Order[]," asserting that Angelee was engaged in "financial abuse," "talked [Harold] into giving her his money," and attempted to "coerce" Harold to move to Texas. For good measure, Rowland alleged in an attachment that Angelee "has 5 children (4 are illegitimate) by different fathers," that one was "give[n] to the father," a second "given up for adoption," another "taken" by child services due to Angelee's "drug use," and that Angelee "is currently unemployed by choice." There is no proof of any of these allegations in the record, which includes multiple pages of California social services reports and several guardian ad litem reports authored in Michigan. We recount them only because Rowland's troubling accusations help explain the decisions initially made by the probate court.[1]

---

[1] While we understand that a court hearing Rowland's unproven charges about Angelee may have harbored justifiable concerns about Angelee's suitability to serve as Harold's guardian or conservator, we are far less sanguine about the performance of Kenneth Prins, who was

Rowland's request for a California restraining order is notable for two additional reasons. First, it fails to mention that Harold had twice granted Angelee powers of attorney *before* Harold's dementia diagnosis, specifically authorizing Angelee to make financial and real estate transfers on his behalf. Second, the form Rowland filled out in support of her request for a restraining order includes Angelee's correct address on Rolling Forest Lane in Hockley, Texas.

Predictably and appropriately, California launched an investigation into Rowland's charges. Ultimately, the allegations were found "unsubstantiated," but that determination came long after the Allegan Probate Court's wheels had firmly turned in Rowland's direction.

On November 22, 2016, Rowland filed a petition in the Allegan Probate Court, seeking appointment as Harold's guardian. The petition identified Angelee as Harold's daughter, but listed her address as "17600 Badtke Road" in Hockley, Texas, and her telephone number as "unknown." Angelee did not receive this petition, as the address Rowland identified belongs to an industrial facility.

Rowland averred that the emergency appointment of a temporary guardian was necessary so that Harold's investments could be transferred to an Edward D. Jones account in Douglas, Michigan. She announced her intention to sell Harold's California property under the power of attorney he had granted her, but acknowledged that Edward D. Jones's legal department questioned Harold's mental capacity and required a guardianship before effectuating any transfers. Rowland's petition for conservatorship rehashed the same information and misinformation.

The probate court appointed Kenneth Prins as Harold's guardian ad litem and conducted an emergency hearing on December 9, 2016. Rowland, Prins and Michael McClellan, a representative of the Michigan Department of Health and Human Services, attended the hearing.

Prins testified that according to Rowland, Angelee persuaded Harold to give her at least $73,000 in addition to monthly checks of approximately $1,500. Harold had an estate worth $660,000, Rowland advised, consisting of a Texas Wells Fargo account and a California home. Prins relayed the "concern" of "family members" that Angelee "is going to try to get this money and take custody of the dad and take conservatorship and take the money and then basically, run." Relying solely on information provided by Rowland, Prins testified that Angelee "has had a very difficult life," that "[a]ll five [of her] children were taken away from her through adoption or Child Protective Services." Prins reiterated Rowland's claim that Angelee "does have a drug problem, a prescription drug problem, in the past, so that's why we [are] here today." After expressing that Angelee is "a little bit untrustworthy from what I hear," Prins told the court that Rowland took "very good care" of Harold.

---

appointed by the probate court as Harold's guardian ad litem. As we discuss later in this opinion, Prins recounted Rowland's allegations to the court without bothering to verify them, poisoning the probate waters. As a result, Angelee entered the litigation at a significant and undeserved disadvantage. In our view, Prins acted as Rowland's advocate rather than Harold's.

Prins added that he had talked to Harold, who "wouldn't mind living" in Michigan but preferred warm weather. Harold told Prins that "if I do go to Texas . . . my daughter says she wants $93,000 to pay off the house, and she can have it. . . ." According to Prins, Harold was "just not thinking straight[.]" McClellan advised that his counterparts in California were still investigating Rowland's allegations. He and Prins recommended the appointment of a temporary guardian.

Rowland explained that Harold had lived and worked in Texas, then retired to California with his wife. She described that he developed dementia symptoms three years previously and currently was unable to recognize and understand common, everyday things. Rowland went to California and decided "to take charge" after Penni died. She obtained Harold's power of attorney and arranged with an Edward D. Jones agent to bring Harold's money from Texas to Michigan.

The probate court appointed Rowland as Harold's temporary guardian but opted for a public conservator, Kimberly Milbocker, "until we get this sorted out." The court appointed Jeremy Baier to serve as Harold's attorney.

Prins filed a GAL report three days later. For the most part, his report recapitulated the information he provided at the emergency hearing. He added that had since spoken with Angelee and learned her correct phone number and address. Angelee told him that her father bought the house in which she lived in Texas, the home was ready for Harold to live in, and that she wanted to be her father's guardian and conservator. Nevertheless, Prins recommended that the trial court appoint Rowland as Harold's guardian and conservator.

At a December 16, 2016 hearing, Prins advised that both Rowland and Angelee desired appointment as Harold's guardian and conservator. He verified that Rowland went to California and brought Harold back to her home in Fennville, Michigan, where Harold then resided, and that Angelee had a place for him to live in Texas. Harold told Prins that he wanted to give Angelee $99,000 to pay off the debt on the Texas home, and that he disliked winter weather and wanted to live in Texas during the winter and with Rowland during the summer. Prins testified that he knew that Rowland would provide Harold excellent care. After admitting that he "didn't know Angie very well," Prins recommended that Rowland serve as Harold's guardian and conservator.

Baier, Harold's attorney, testified that Harold would "much rather be in Texas," as he felt "more comfortable there." He recommended that Angelee serve as Harold's guardian, but was "not fully convinced" that she should also be his conservator. "[I]t may be in [Harold's] better interests," Baier suggested, "to have a public conservator."

McClellan told the court that he had communicated with California Adult Protective Services, which questioned how Harold came to Michigan and whether he did so by his own choosing. McClelland also interviewed Harold, who indicated that he planned to go with Angelee to Texas. However, McClelland claimed, California Adult Protective Services substantiated that Angelee had financially exploited Harold and that Harold had given Angelee checks and large sums of money. McLellan expressed concern regarding appointing Angelee as the conservator but he had no opinion regarding the guardianship appointment.

-4-

Milbocker suggested that the money transferred to Angelee might be considered during a "look-back period review" if Harold ever needed long-term care benefits, and speculated that the residence in Texas might be construed as a second home. She recommended that the conservatorship be awarded to someone other than Angelee.

Rowland urged the court to appoint her as both Harold's guardian and conservator. She claimed that she brought Harold to Michigan because she needed to secure his money in an Edward D. Jones investment account. Harold executed the powers of attorney only three or four days after his wife died, Rowland admitted. Rowland maintained that she did not trust Angelee and that Angelee could not provide Harold needed care.

Angelee asserted that Rowland fraudulently obtained the power of attorney five days after her mother's death and then filed an abuse case in California that required her to go to California to defend herself. Angelee explained that the house in Texas belonged to Harold, she paid him rent and the mortgage, and that Harold bought it with the understanding that she would care for him in that home. Her father always intended to return to Texas, Angelee declared. She affirmed her love for Harold and lamented that Rowland took him away.

The court reaffirmed Harold's need for a guardian and a conservator and opined that an independent person should manage Harold's finances. Due to the circumstances surrounding Harold's grant of powers of attorney to Rowland and the fact that he had dementia at that time, the court suspended them. Because Rowland and Angelee could not work together, the trial court appointed Milbocker as Harold's guardian and conservator. Milbocker thereafter approved a plan to have Harold visit Angelee in Texas to finish out the winter months.

In April 2017, Milbocker filed a petition to modify Harold's guardianship and conservatorship by permitting her resignation. Milbocker's petition prompted Angelee to file her own petitions for appointment as Harold's guardian and conservator.

In a lengthy probate court submission, Angelee described the gradual onset of Harold's dementia and contended that he lacked the capacity to execute the power of attorney in favor of Rowland. The petition chronicled Angelee's contacts with Rowland before Rowland filed the Michigan petition, demonstrating Rowland's awareness of Angelee's correct address and telephone number. Angelee charged that Rowland had knowingly misrepresented Angelee's address in the initial petition to deny her timely notice of the proceedings.

Angelee also took issue with much of the evidence introduced through Prins at the earlier hearings. She supplied the court with copies of the powers of attorney that Harold signed in 2013 and 2015, and other documents refuting Rowland's claims. No evidence supported that Angelee financially abused Harold, the petition averred. Therefore, as Harold's only adult child and his sole heir, no good cause existed to prevent her from being appointed Harold's guardian and conservator. Angelee also sought an accounting of Rowland's handling of Harold's assets, personal property, and financial affairs. Angelee accused Rowland of impropriety and breaches of fiduciary duties.

Rowland responded by denying Angelee's allegation that Rowland had acted improperly. She asserted that she had four different addresses for Angelee and did not know Angelee's

current address so she mailed her petitions to one of the addresses. She admitted that she obtained an invalid power of attorney from Harold as he lacked the capacity at the time to make such a grant. Rowland argued that Angelee had no right to an accounting because the transfers of Harold's assets occurred at Milbocker's direction.

During the subsequent hearing, Angelee's counsel contended that she had priority for appointment and sought to prove that all of the money transfers condemned by Rowland had been proper. He emphasized that no evidence supported that Angelee was unqualified to be Harold's guardian or conservator. Milbocker testified that Harold had received good care in Michigan and in Texas, and expressed no concerns about either placement. She reported that California had reopened the adult protective series case and concluded that none of the allegations against Angelee could be substantiated.[2] Milbocker, too, believed that Harold's transfers to Angelee reflected no wrongdoing on her part. In a report prepared two days later, Milbocker advised the court that "[t]he [Texas] home was obtained in August 2015, prior to any documented knowledge of Harold's dementia, that I have been able to find within his physician evaluations and documentation in California. Angelee has maintained the mortgage payments with Harold maintaining the cost of home insurance and property taxes." Milbocker expressed at the hearing that either Angelee or Rowland could serve as Harold's guardian.

The probate court opined that Angelee had failed to identify any problems with having a public guardian and maintaining the status quo. In the court's view, the arrangement had worked well. "[T]he focus here is not the rights of either the sister or the daughter," the court ruled, "the focus is Mr. Gerstler himself. What's in his best interest . . . for him right now, no matter what the history is. . . ." Because Harold seemed happy, was able to see his sisters and Angelee, and "despite any presumption or priority as far as relatives," the court determined that the best arrangement for Harold was to maintain an independent public guardian and conservator. The court appointed Tammy Dykstra as successor guardian and conservator per Milbocker's recommendation.

A few days later, Milbocker filed a final report clarifying certain facts for the court's records. Milbocker noted that "Harold has verbalized a desire to take care of his only daughter stating, 'Of course I want to help her.' " In a private conversation with Milbocker, Harold expressed "guilt for the extensive time spent on caring for Angelee's [deceased] brothers [who suffered from muscular dystrophy] and a neglect of Angelee which he believed led to her previous problems of substance abuse." Milbocker noted that Angelee had taken an unannounced drug test at Milbocker's request and that Angelee had passed the test.

Milbocker's report also clarified that Rowland received $72 per day for Harold's personal care and $800 per month for Harold's room and board. She noted that Rowland did not cooperate with Angelee to enable her to visit Harold despite Milbocker's attempts to intervene, and that California Adult Protective Services never substantiated any malfeasance by Angelee regarding use or abuse of Harold's funds. She advised that she and the California Adult

---

[2] The California APS report also observed that Harold "never expressed any concerns against Angelee and did not appear to be fearful or intimidated by Angelee."

Protective Services reviewed transactions and receipts respecting all funds given to Angelee and found only a minimal discrepancy that raised no concern. Harold told her he desired to help Angelee, and the Texas home was purchased in 2015 before any documentation of Harold's dementia. Angelee paid the mortgage, and Harold had paid the insurance and taxes. Milbocker advised that when Harold first traveled to Texas he lived in an assisted living facility briefly, did not like it, and moved into Angelee's Texas home with Milbocker's knowledge. Rowland called the police and claimed that Angelee kidnapped Harold even though the assisted living facility had discharged Harold to live with Angelee. While in Texas, Harold had a comfortable stay. Angelee communicated with Milbocker consistently.

The probate court denied Angelee's motion for reconsideration, and she now appeals.

II

This Court has recently summarized the standard of review applicable to this case as follows:

> We review the probate court's dispositional rulings for an abuse of discretion. A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes. We review the probate court's findings of fact for clear error. A factual finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made. We review de novo any statutory or constitutional interpretation by the probate court. [*In re Guardianship of Redd*, 321 Mich App 398, 403-404; 909 NW2d 289 (2017), lv pending (quotation marks and citations omitted).]

We conclude that the probate court abused its discretion by appointing Dykstra as Harold's successor guardian and conservator because the court failed to make any factual findings relevant to the statutory framework that governs this case, and otherwise neglected to apply the law governing guardianship and conservatorship appointments.

III

MCL 700.5313 addresses the appointment of a guardian of a legally incapacitated person. The statute provides for orders of priority and preference as follows:

(2) In appointing a guardian under this section, the court shall appoint a person, if suitable and willing to serve, in the following order of priority:

(a) A person previously appointed, qualified, and serving in good standing as guardian for the legally incapacitated individual in another state.

(b) A person the individual subject to the petition chooses to serve as guardian.

(c) A person nominated as guardian in a durable power of attorney or other writing by the individual subject to the petition.

(d) A person named by the individual as a patient advocate or attorney in fact in a durable power of attorney.

(3) If there is no person chosen, nominated, or named under subsection (2), or if none of the persons listed in subsection (2) are suitable or willing to serve, the court may appoint as a guardian an individual who is related to the individual who is the subject of the petition in the following order of preference:

(a) The legally incapacitated individual's spouse. This subdivision shall be considered to include a person nominated by will or other writing signed by a deceased spouse.

(b) *An adult child of the legally incapacitated individual.*

(c) A parent of the legally incapacitated individual. This subdivision shall be considered to include a person nominated by will or other writing signed by a deceased parent.

(d) A relative of the legally incapacitated individual with whom the individual has resided for more than 6 months before the filing of the petition.

(e) A person nominated by a person who is caring for the legally incapacitated individual or paying benefits to the legally incapacitated individual.

(4) *If none of the persons as designated or listed in subsection (2) or (3) are suitable or willing to serve, the court may appoint any competent person who is suitable and willing to serve, including a professional guardian as provided in [MCL 700.5106].* [Emphasis added.]

With respect to the appointment of a conservator, MCL 700.5409 provides as follows:

(1) The court may appoint an individual, a corporation authorized to exercise fiduciary powers, or a professional conservator described in [MCL 700.5106] to serve as conservator of a protected individual's estate. The following are entitled to consideration for appointment in the following order of priority:

(a) A conservator, guardian of property, or similar fiduciary appointed or recognized by the appropriate court of another jurisdiction in which the protected individual resides.

(b) An individual or corporation nominated by the protected individual if he or she is 14 years of age or older and of sufficient mental capacity to make an intelligent choice, including a nomination made in a durable power of attorney.

(c) The protected individual's spouse.

(d) *An adult child of the protected individual.*

(e) A parent of the protected individual or a person nominated by the will of a deceased parent.

(f) A relative of the protected individual with whom he or she has resided for more than 6 months before the petition is filed.

(g) A person nominated by the person who is caring for or paying benefits to the protected individual.

(h) *If none of the persons listed in subdivisions (a) to (g) are suitable and willing to serve, any person that the court determines is suitable and willing to serve.*

(2) A person named in subsection (1)(a), (c), (d), (e), or (f) may designate in writing a substitute to serve instead, and that designation transfers the priority to the substitute. If persons have equal priority, the court shall select the person the court considers best qualified to serve. *Acting in the protected individual's best interest, the court may pass over a person having priority and appoint a person having a lower priority or no priority.* [Emphasis added.]

MCL 700.5106 addresses the appointment of a professional guardian or a professional conservator in relevant part as follows:

(1) Subject to subsections (2) and (3), the court may appoint or approve a professional guardian or professional conservator, as appropriate, as a guardian or conservator under this act, or as a plenary guardian or partial guardian as those terms are defined in . . . MCL 330.1600.

(2) *The court shall only appoint a professional guardian or professional conservator as authorized under subsection (1) if the court finds on the record all of the following*:

(a) The appointment of the professional guardian or professional conservator is in the ward's, developmentally disabled individual's, incapacitated individual's, or protected individual's best interests.

(b) *There is no other person that is competent, suitable, and willing to serve in that fiduciary capacity* in accordance with [MCL 700.5212, MCL 700.5313, or MCL 700.5409]. [Emphasis added.]

In short, MCL 700.5106(2) provides that, before appointing a professional guardian or a professional conservator, a probate court must find that the appointment of a professional fiduciary is in the incapacitated person's best interests *and* that there is no other person who is competent, suitable, and willing to serve in that fiduciary capacity in accordance with, as relevant here, MCL 700.5313 or MCL 700.5409. MCL 700.5313(4) similarly allows appointment of a professional guardian only if none of the persons listed in MCL 700.5313(2) or (3) are suitable or willing to serve. With respect to the appointment of a conservator, MCL 700.5409(2) likewise allows for departure from the statutory order of priority in the best interests

of the protected individual, and MCL 700.5409(1)(h) allows appointment of any person that is suitable and willing to serve if none of the persons listed in MCL 700.5409(1)(a)-(g) are suitable and willing to serve. This Court has explained the meaning of suitability in the context of a guardianship by holding that "a 'suitable' guardian is one who is qualified and able to provide for the ward's care, custody, and control." *Redd*, 321 Mich App at 408.

Here, Angelee claimed priority as Harold's sole surviving adult child, and there is no dispute that Angelee holds the highest position of priority or preference for appointment as Harold's guardian and conservator under the statutory provisions set forth above. Yet the trial court instead appointed Dykstra, a professional guardian and conservator. In order to appoint a professional fiduciary such as Dykstra, the trial court was required to find that the appointment of such a professional served Harold's best interests *and* that no other person was competent, suitable, and willing to serve in that fiduciary capacity in accordance with the governing statutory provisions. MCL 700.5106(2).

The trial court made terse findings regarding Harold's best interests by stating that "perfect harmony" had been achieved by the appointment of the previous professional guardian and conservator, Kimberly Milbocker, and that Harold was "happy" in the existing arrangement because he was traveling back and forth between Texas and Michigan in order to see both Angelee and his sisters. According to the court, this arrangement was "working . . . because we've an independent third party that's keeping track." The court also noted that if Harold ever needed Medicaid or other benefits, a clear record from an independent third party would exist and there would be no need to "prov[e] the nuances that might be there as far as making it work." The court emphasized that its "main focus is [Harold's] welfare. And I do find, despite any presumption or priority as far as relatives, the best resource, the best answer for him at this point is independent." The court again stated that Harold presently "likes what's happening, he likes what's taking place, it's working, and so the best way to accomplish as pointed out by [Harold's court-appointed attorney] is to have a public guardian and conservator and we're lucky to have another one."

While the probate court's focus on Harold's welfare is commendable, the court missed a critical step in its analysis. When Milbocker resigned as Harold's guardian and conservator, Angelee petitioned to be appointed to fill those roles. At that juncture, the probate court was required to reconsult the statutory framework before appointing another public administrator. The court never articulated any findings regarding Angelee's competence and suitability to serve. Absent those findings, the court erred by appointing Dykstra.

Neither MCL 700.5313 nor MCL 700.5409 references the standard of proof applicable to a probate court's determination of whether to depart from the statutory priority and appoint a public administrator as guardian and conservator. This Court has noted in the analogous context (a petition for removal of a guardian) that when a standard of proof is undescribed, the default preponderance-of-the-evidence standard applies in determining a person's suitability. See *Redd*,

321 Mich App at 408-410. By using the mandatory term "shall,"[3] MCL 700.5106(2) *requires* that, in order to appoint a professional guardian or professional conservator, the probate court must find that the appointment of such a professional is in the incapacitated person's best interests *and* that no other person in priority under the applicable statutes for appointment of guardians and conservators is competent, suitable, and willing to serve in that fiduciary capacity. See *Redd*, 321 Mich App at 409 (noting that the use of the word "shall" "indicates a mandatory and imperative directive[]") (quotation marks and citation omitted). It follows that to depart from the statutory priority provisions and appoint a public guardian and public conservator, the probate court was tasked with finding by a preponderance of the evidence that Angelee was not competent and suitable to serve in that fiduciary capacity. That analysis was not made. Alternatively stated, the probate court failed to make any determination of whether Angelee was competent, suitable, and willing to serve as Harold's guardian and conservator. Absent this requisite finding, the court abused its discretion by appointing a professional fiduciary in lieu of appointing Angelee, who held the position of statutory priority or preference for appointment.

On remand, the probate court must reconsider the appointment of a new guardian and conservator in conformity with EPIC. The court must make specific findings of fact regarding Angelee's competence, suitability and willingness to serve in those capacities. Relevant facts that should enter into the court's analysis include Angelee's history of satisfactory care for her father and that unlike Rowland, Angelee does not charge her father for rent or any of his living expenses. Should Rowland provide evidence in the remand proceedings, we direct the court to weigh her credibility carefully in light of the incorrect information she provided in her initial petition regarding Angelee's address and telephone number, and her conduct in obtaining Harold's power of attorney despite awareness that he was incompetent to give it. Given our determination that further proceedings are required, we need not consider Angelee's remaining issues on appeal.

We vacate the guardianship and conservatorship orders and remand for further proceedings consisted with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Thomas C. Cameron

---

[3] Again, MCL 700.5106(2) states that "[t]he court shall only appoint a professional guardian or professional conservator . . . if the court finds on the record all of the following . . . ."