*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Guardianship of AMS.

THOMAS SEABROOK,

UNPUBLISHED
February 10, 2025
3:08 PM

Appellant,

v

No. 372183
Midland Probate Court
LC No. 24-003367-GA

OFFICE OF MIDLAND PUBLIC GUARDIAN,

Appellee.

Before: BORRELLO, P.J., and REDFORD and PATEL, JJ.

PER CURIAM.

Appellant appeals as of right the probate court's order removing him as guardian of his wife, AMS, an incapacitated person, and appointing appellee to be AMS's professional guardian. For the reasons set forth in this opinion, we reverse and remand the matter to the trial court for further proceedings consistent with this opinion.

## I. BACKGROUND

The material facts are undisputed. AMS's two daughters, Theresa Lee Pickering and Kristin Renee Burghardt, filed separate petitions seeking the appointment of a guardian for AMS, with both daughters nominating themselves for the role. The probate court appointed appellant as guardian of AMS, after which AMS was relocated to a nursing facility. Shortly thereafter, Pickering filed a petition to modify or terminate this guardianship, explicitly indicating a preference for modification over termination. She contended that appellant was uncooperative with family visitation and had effectively alienated them. Pickering requested that the probate court modify appellant's powers to permit unrestricted visits from family members. Notably, the options for terminating the guardianship, removing the appellant as guardian, or appointing a new guardian were left unchecked in her petition. Additionally, Pickering sent a letter to the probate court expressing her intent to pursue full guardianship over her mother, stating her lack of trust in others

-1-

for her care. She also requested the court to appoint a guardian should her request for full guardianship be denied.

In response to the petition, the probate court appointed a guardian ad litem (GAL) to advocate for AMS in the forthcoming "Hearing on the Petition to Modify Guardianship." The Guardian ad Litem's (GAL) report highlighted the difficulties in establishing contact with the appellant, who remained unresponsive to attempts at communication and previously demonstrated a concerning level of non-cooperation during the initial guardianship proceedings. Nevertheless, the GAL was ultimately able to engage in a conversation with the appellant, who agreed to a visit with AMS. Following this visit, the GAL determined that AMS was in a secure environment and that her needs were adequately addressed. AMS communicated her desire to see her daughters and sisters. The GAL confirmed with the nursing facility staff that the appellant had instructed them to restrict visits without his prior approval. Therefore, the GAL recommended that the court either mandate the appellant to permit visits from AMS's children or appoint a qualified guardian following a hearing to ascertain the individual most suitable for providing the necessary care and protection for AMS. The probate court then issued a notice for a "Hearing on the Petition to Modify Guardianship," with proof of service documenting that the notice was disseminated via first-class mail to the appellant, AMS, and other relevant parties, including AMS's daughters and sister.

At the hearing's outset, the probate court announced it was holding a hearing on "a petition to modify the guardianship." Appellant's counsel stated that the appellant was amenable to having visitors for AMS and explained that no visitors had been allowed while AMS was settling into the nursing facility. The probate court called Pickering to testify, and she reiterated that appellant had prevented family members from visiting her. Appellant's counsel questioned Pickering about the relief she was requesting: "And your . . . petition to modify, you're just asking that access to your mom be granted with no restrictions, correct?" Pickering replied, "Correct. But I don't feel that he should have full guardianship, though." Appellant's counsel asked, "But again, your petition is just asking for . . . no restrictions, correct?" At that point, the court interjected, "The solutions will be up to the court." Appellant's counsel clarified that he was "just asking what she's asking for." The court reiterated that the court will decide the "solution to this issue." Appellant's counsel indicated he was not prepared for a removal hearing, that a removal hearing should be scheduled, and that discovery should be permitted. The court disagreed and stated that it would be "ruling on this." The GAL largely deferred to the court's discretion.

The probate court removed appellant as guardian and appointed a professional guardian:

[W]hat is very clear to me is there has been an obstruction of visitation by the guardian, and I'm extremely concerned about that. The Guardian ad Litem has been clear in the . . . appointment, that he had with [AMS], that she wants to see these people who are represented by the petitioner, and it was extremely hard for [the GAL] to be able to even speak with [AMS], which the Court finds to be inappropriate and not . . . acceptable. So, the Court is appointing Steve Wixson as the guardian for, and on behalf of, [AMS]. And . . . Mr. Wixson will take a look at what the actions have been, what [appellant]'s strengths are, and then if return of the guardianship is appropriate with [appellant], we'll take a look at it. But, there's no way that this is appropriate, what is going on. And I appreciate the fact that the

petition was filed and we need to have some level of dignity here. And that has not happened. And with that, that is the order of this Court.

On appeal, appellant argues that the probate court erred by removing him without proper notice and failing to conduct the required statutory analysis. He further contends that the probate court was incorrect in appointing a professional guardian without first conducting the necessary statutory analysis.

## II. ANALYSIS

## A. STANDARD OF REVIEW

There are several standards utilized when reviewing a probate court's decision:

> "We review the probate court's dispositional rulings for an abuse of discretion. A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes. We review the probate court's findings of fact for clear error. A factual finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made. We review de novo any statutory or constitutional interpretation by the probate court." [*In re Gerstler Guardianship*, 324 Mich App 494, 507; 922 NW2d 168 (2018) (citation omitted).]

"A trial court necessarily abuses its discretion when it makes an error of law." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016).

"All matters of statutory interpretation begin with an examination of the language of the statute." *McQueer v Perfect Fence Co*, 502 Mich 276, 286; 917 NW2d 584 (2018). If a statute is unambiguous, it "must be applied as written." *Id*. (quotation marks and citation omitted). This Court may not read something into the statute "that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Id*. (quotation marks and citation omitted). Furthermore, statutory language "cannot be viewed in isolation, but must be construed in accordance with the surrounding text and the statutory scheme." *Id*. (quotation marks and citation omitted). In other words, a statute must be read as a whole. *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009). "Courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002). Finally, courts "give undefined statutory terms their plain and ordinary meanings." *Id*.

## B. ANALYSIS

Appellant contends that the probate court abused its discretion by changing the proceedings from a modification of the guardianship to a removal of the guardian without providing him and AMS with the notice required by statute.

The Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*., governs the appointment and removal of guardians for incapacitated persons. *In re Redd Guardianship*, 321

Mich App 398, 404; 909 NW2d 289 (2017).  Pursuant to MCL 700.5310(2), "any other person interested in the ward's welfare may petition for an order removing the guardian, . . . modifying the guardianship's terms, or terminating the guardianship.  A request for this order may be made by informal letter to the court or judge."  MCL 700.5311 mandates certain notice requirements for the removal of a guardian:

> (1) In a proceeding for the . . . removal of an incapacitated individual's guardian, other than the appointment of a temporary guardian or temporary suspension of a guardian, or to designate a standby guardian or change the designated standby guardian, *notice of hearing must be given to each of the following*:
>
> (a) The ward or the individual alleged to be incapacitated and that individual's spouse, parents, and adult children.
>
> (b) A person who is serving as the guardian or conservator or who has the individual's care and custody.  [Emphasis added.]

Furthermore, "[n]otice must be served personally on the alleged incapacitated individual.  Notice to all other persons must be given as prescribed by court rule.  Waiver of notice by the individual alleged to be incapacitated is not effective unless the individual attends the hearing or a waiver of notice is confirmed in an interview with the visitor."  MCL 700.5311(2).

The notice of the hearing issued to the appellant and AMS indicated a modification rather than a removal. It was only upon the commencement of the hearing that the probate court appeared to shift the proceedings from modification to removal. This deviation was not consistent with MCL 700.5311(1). Furthermore, there is no evidence to suggest that AMS received personal service in accordance with MCL 700.5311(2). Such requirements are mandated, as underscored by the use of the term "must."    See *True Care Physical Therapy, PLLC v Auto Club Group Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 362094); slip op at 7.  Pickering submitted a letter to the probate court requesting the appellant's removal as guardian, and the GAL recommended the possibility of such removal. However, another court-filed document by Pickering indicated a desire for modification rather than removal. Despite this, neither the GAL's report nor Pickering's letter absolved the probate court of its obligation to provide notice under MCL 700.5311. Therefore, on remand, both the appellant and AMS must receive the necessary notice prior to convening a removal hearing.

While a reversal is mandated concerning this particular issue, we also consider the appellant's additional concerns, as we find them to possess merit and anticipate their reexamination upon remand.

The appellant additionally contends that the probate court committed an error by neglecting to perform a suitability analysis prior to the removal of the appellant as guardian.

Appellant failed to raise this issue in the probate court, leaving it unpreserved. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020).  Normally, "[i]n civil cases, Michigan follows the raise or waive rule of appellate review." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090);

slip op at 2. "If a litigant does not raise an issue in the trial court, this Court has no obligation to consider the issue." *Id*. at ___; slip op at 3. This Court recently held that it is error to apply the plain-error rule from *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999), to civil cases because it contradicts our Supreme Court's decisions, *Tolas Oil*, ___ Mich App at ___; slip op at 5. However, due to the nature of the rights involved, this Court more recently held that *Tolas Oil* should not be extended to guardianship cases and that the plain-error standard from *Carines* should apply. *In re AMMB Guardianship*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368915); slip op at 2-3. Accordingly, this Court reviews unpreserved issues in guardianship cases for plain error affecting substantial rights. *Id*. at ___; slip op at 3. A party must establish four elements in order for this Court to reverse:

> "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) the plain error affected substantial rights, and 4) once [an appellant] satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted when the plain, forfeited error seriously affected the fairness, integrity or public reputation of judicial proceedings." [*Id*. (citation omitted; alteration in original).]

Although the EPIC provides some provisions governing removal of a guardian, it "does not set forth a specific standard for removal of a guardian." *Redd Guardianship*, 321 Mich App at 405. "[T]o remove a guardian under MCL 700.5310, the probate court *must find* that the guardian is no longer *suitable* or willing to serve." *Id*. at 407 (emphasis added). The applicable standard is a preponderance of the evidence. *Id*. at 410. As for what a "suitable" guardian entails, this Court explained that "[t]he EPIC thus makes clear that the guardian's focus of concern must be on the ward, that decisions made on behalf of the ward must be in the interests of the ward and not the guardian, and that the guardian must be qualified to achieve the purposes set forth in EPIC." *Id*. at 407. Additionally, since "a 'suitable' guardian is one who is qualified and able to provide for the ward's care, custody, and control," "it logically follows that particularly relevant evidence would include (1) evidence on whether the guardian was still qualified and able, and (2) evidence on whether the guardian did, in fact, satisfactorily provide for the ward's care, custody, and control in the past." *Id*. at 408.

The probate court rightfully issued terse findings regarding appellant's removal. The court articulated significant concerns regarding the appellant's restriction on family members visiting AMS and the GAL's challenges in contacting AMS. The court correctly described the situation as inappropriate and unacceptable. However, the probate court made no references to appellant's suitability, the applicable statutory framework, or the standard of review. While the lack of visitation justly raised concerns, it was the only issue highlighted by the court, and appellant indicated a willingness to concede this point. Although the statute does not prescribe specific wording, the probate court needs to determine a guardian's unsuitability. We find the court's findings in this regard unconvincing. Removal falls within the discretion of the probate court. See, *Gerstler Guardianship*, 324 Mich App at 507, but the court must still follow the proper analysis set forth by the EPIC and this Court. By not engaging in the proper analysis, the probate court plainly erred, and this error affected appellant's substantial rights because he was removed as AMS's guardian. The EPIC was established to protect the rights of vulnerable third parties who cannot advocate for themselves. On remand, the probate court must follow the EPIC and determine whether appellant was suitable before removing him as guardian.

Furthermore, we concur with appellant that the probate court made an error by appointing a professional guardian without first establishing on the record that no other individuals with priority were either willing or suitable to serve. Since this issue is unpreserved, we review it for plain error affecting substantial rights. *AMMB Guardianship*, ___ Mich App at ___; slip op at 2-3.

Both MCL 700.5313(2) and (3) provide lists of individuals who have priority for a guardianship, including "[a] person previously appointed, qualified, and serving in good standing as guardian for the legally incapacitated individual in this state or another state," MCL 700.5313(2)(a); "[t]he legally incapacitated individual's spouse," MCL 700.5313(3)(a); and "[a]n adult child of the legally incapacitated individual," MCL 700.5313(3)(b). Pursuant to MCL 700.5313(4), if none of the individuals "designated or listed in subsection (2) or (3) are suitable or willing to serve, the court may appoint any competent person who is suitable and willing to serve, including a professional guardian as provided in section 5106." However, before the court may appoint a professional guardian under MCL 700.5106(1), the court must engage in the following analysis:

> (2) The court shall only appoint a professional guardian or professional conservator as authorized under subsection (1) if the court *finds on the record all of the following*:
>
> (a) The appointment of the professional guardian or professional conservator is in the ward's, developmentally disabled individual's, incapacitated individual's, or protected individual's best interests.
>
> (b) *There is no other person that is competent, suitable, and willing to serve in that fiduciary capacity in accordance with section* 5212, *5313*, or 5409. [MCL 700.5106(2) (emphasis added).]

In *Gerstler Guardianship*, 324 Mich App at 497, this Court held that the probate court erred by appointing a professional guardian without first finding that the individual with priority under MCL 700.5313 was not competent, suitable, and willing to serve as a guardian. The legally incapacitated person's daughter petitioned and nominated herself to serve as guardian and conservator, but the probate court appointed a professional guardian instead. *Id*. at 497, 504. In doing so, the probate court failed to first find that there were no other statutorily listed persons with priority who were competent, suitable, and willing to serve. *Id*. at 511-512. Instead, the probate court made findings related to other matters such as the status quo and the interests of the legally incapacitated person. See *id*. at 512. Although this focus on the welfare was "commendable," this Court explained that "the court missed a critical step in its analysis" by failing "to reconsult the statutory framework before appointing another public administrator." *Id*.

Here, while the probate court expressed grave concern about the lack of visitation and the GAL's difficulty in visiting AMS, the probate court neglected to consider whether there were other competent, suitable, and willing individuals with priority, such as AMS's two daughters and sister. Although the court's focus on AMS's welfare was commendable, that focus alone did not fulfill the statutory requirements. As a result, the probate court's rulings constituted clear error that affected the appellant's substantial rights because the appellee replaced him as AMS's guardian.

Contrary to appellee's claims, the absence of some individuals with priority at the hearing is irrelevant, as the statute's plain language does not excuse the probate court from making the necessary findings based on attendance. Appellee is also incorrect in stating that appellant seeks to assert third-party rights. It is true that "[a] plaintiff must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Barclae v Zarb*, 300 Mich App 455, 483; 834 NW2d 100 (2013) (quotation marks and citation omitted). However, appellant is not attempting to assert another's rights; instead, he is asserting his rights regarding his removal and replacement with a professional guardian. On remand, the probate court must make the necessary findings before appointing a professional guardian.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction. No costs are awarded. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ James Robert Redford
/s/ Sima G. Patel