*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re TIPPETT FAMILY TRUST.

---

DARRELL LAWSON, Trustee of TIPPETT
FAMILY TRUST U/A/D April 29, 2002,

        Appellee,

v

REBECCA GOINES,

        Appellant.

UNPUBLISHED
April 21, 2025
9:26 AM

No. 369273
Wayne Probate Court
LC No. 2023-882572-TV

---

Before: BORRELLO, P.J., and RIORDAN and PATEL, JJ.

PER CURIAM.

Rebecca Goines appeals as of right the probate court's order denying her petition to admit a third amendment to the Tippett Family Trust. Following a hearing, the probate court considered the evidence and testimony and concluded that Jerry W. Tippett (decedent) did not sign the third amendment. Giving deference to the probate court's credibility assessments, we are not left with a definite and firm conviction that a mistake has been made and the probate court's decision was not outside the range of reasonable and principled outcomes. We affirm.

## I. BACKGROUND

On April 29, 2002, decedent and his wife created the Tippett Family Trust with the assistance of an attorney from the United Automobile Workers (UAW) Ford Legal Services Plan. Decedent and his wife were both named as trustees of the revocable living trust. Joyce Massengale was named as successor trustee. The trust "deliberately made no provision" for the couple's only child, Jerry D. Tippett (Jerry D.). It is undisputed that there were two amendments to the trust. In June 2009, decedent and his wife amended the trust to name Jerry D. as the beneficiary and first successor trustee. Decedent's friend, Darrell Lawson, was named as the alternate beneficiary and successor trustee. The first amendment was prepared by another attorney with the UAW Ford Legal Services Plan. After decedent's wife passed away in 2016, decedent amended the trust a

second time, reaffirming Jerry D. as the beneficiary and first successor trustee and Lawson as the alternate beneficiary and successor trustee. The second amendment was also prepared by an attorney.

Goines and Jerry D. became engaged. Goines and Jerry D. lived at the decedent's home located on Lee Road in Rockwood, Michigan (Lee Road property). Jerry D. passed away on February 20, 2022. Decedent was admitted to hospice care on May 26, 2022, and passed away on May 29, 2022.

After decedent passed, Lawson accepted appointment as successor trustee and served Goines with notice to vacate the Lee Road property. Goines presented a document dated March 13, 2020 that purported to be a third amendment to the trust. The document named Jerry D. as the beneficiary and first successor trustee, but replaced Lawson with Goines as the alternate beneficiary and successor trustee. The document was signed by two witnesses, Darrell Mosser and Tammy Hall. The document was notarized by Jennifer Modi, but the notary block referred to the document as the "SECOND AMENDMENT TO THE TIPPETT FAMILY TRUST DATED MARCH 13, 2020."[1] No attorney was listed on the document. Lawson disputed the validity of the third amendment and demanded that Goines return all trust assets. Goines failed to respond.

Lawson filed a petition for supervised trust administration, the surrender of trust assets to the acting successor trustee, and sanctions. The probate court appointed a guardian ad litem (GAL) for the trust. The GAL issued a report recommending that Lawson's petition be granted. The GAL described the purported third amendment as "suspicious," noting that it was "a duplicate of the Second Amendment[,] . . . was only presented by Rebecca Goines when she was being evicted" from the Lee Road property, and the prior trust attorneys were unaware of the document. Goines did not file objections to the petition, but attended the hearing and articulated that she had attempted to retain counsel. On May 24, 2023, the probate court granted the petition, ordered Goines to surrender all trust assets in her possession and control to Lawson, and ordered Goines to file an inventory of all trust assets as of the date of decedent's death.

Goines did not appeal or comply with the probate court's order. Instead, on August 7, 2023, Goines filed a petition to admit the third amendment, remove Lawson as trustee, and find Lawson in breach of his fiduciary duty. Goines presented declarations under oath from Modi and Mosser, who each attested that they signed the third amendment and witnessed decedent sign it. In response, Lawson argued that the purported third amendment was already considered by the probate court in granting his petition, and Goines failed to appeal the May 2023 order. The GAL was reappointed, and issued a report recommending that the petition be denied. The GAL noted that the third amendment was not prepared by an attorney and was a "duplicate format" of the second amendment with Goines inserted in place of Lawson.

An evidentiary hearing was held. Mosser described decedent as a "good friend." Modi maintained she and decedent were "lifelong friends." Goines testified that she "grew up" with decedent from the time she "was a very little girl[]" and was "very good friends" with Jerry D. growing up. They each explained that decedent and Lawson had a business relationship involving

---

[1] It is undisputed that the trust was created on April 29, 2002.

rental properties and real estate. But they maintained that there was a "falling out" before the third amendment was signed. According to Goines, decedent "felt like he was left taking care of [the rental properties] all by hisself [sic]" when Lawson left Michigan. Modi testified that decedent and Jerry D. discussed that they "wanted to protect the assets" and "make sure that all their affairs were in order, going forward."

Goines explained that decedent was in and out of the hospital in the last year or two of his life. During that time, she provided care for him, drove him to appointments, cleaned his house, and cooked him meals. Goines acknowledged that decedent had a girlfriend, Elizabeth Watson, who "provided services" to decedent "[f]rom time-to-time." But because Watson did not have a driver's license, Goines assisted with driving decedent to doctor appointments. In November 2020, decedent made Goines his "entitled patient advocate." In May 2022, decedent appointed Goines as his durable power of attorney.

One week before the third amendment was signed, Jerry D. asked if Mosser would witness a document that needed to be signed. Mosser agreed. Mosser asked Modi, his ex-wife, to attend the signing because she was a notary and Jerry D. stated that the document needed to be notarized. According to Mosser and Modi, they were both present with decedent, Jerry D., and Hall at decedent's home when the third amendment was signed. Goines was not present. Mosser and Modi both testified that Jerry D. drafted the third amendment. Mosser signed the document first. Mosser did not see Hall sign the document, but he witnessed decedent sign the document. Modi verified decedent's identity with his driver's license before witnessing him sign the third amendment. She did not see decedent read the document before signing it. Modi and Mosser both maintained that decedent appeared competent when he signed the document. After Modi witnessed Mosser and Hall sign the document, she notarized it. Mosser observed Modi notarize the document after all three had signed it.

Modi briefly reviewed the document before notarizing it, and understood it to be the third amendment to the trust. But she did not read the notary block, which referred to the document as the second amendment to the trust. Modi kept a log of the documents she notarized, including the third amendment; however, the log was lost in a flood. Modi's notary expired a few days after the third amendment was signed, and she did not renew it. She admitted that she was not a notary at the time she signed her declaration in support of Goines's petition, in which she swore under penalty of perjury that she was "a notary public in good standing, in the State of Michigan." She claimed that she misread the declaration before signing it.

Goines testified that decedent told her he created a trust with his wife, but never discussed any beneficiaries. At some point, decedent asked Goines to help him look for "some papers." They searched decedent's bedroom together, and Goines found paperwork with the word "trust" at the top. Decedent indicated that it was not the paperwork he was seeking. After decedent passed away, Goines was cleaning the Lee Road property when she found an envelope with her name on it and discovered the third amendment inside along with titles for the Lee Road property and decedent's home. Goines assumed it was the paperwork decedent wanted to find. Goines was not present when the third amendment was signed, decedent never mentioned leaving the trust to her, and she had no knowledge of the third amendment until after decedent and Jerry D. had passed away.

Lawson testified that he had known decedent since 1975. In 2001, Lawson and decedent started a corporation, 3-in-1, in which they were both equal shareholders. The corporation operated rental properties and bought and sold houses. Lawson described his relationship with decedent as "great" and testified there was no falling out. Lawson explained he moved out of Michigan in 2017, but asserted that the business relationship never ended. In fact, Lawson returned to Michigan in 2021 to finalize paperwork with decedent for houses that 3-in-1 sold. Lawson and decedent remained signatories on a shared bank account for 3-in-1, shared a cell phone, and shared a boat dock until decedent's death.

Lawson testified that decedent told him about the trust when the second amendment was made. Lawson maintained that he was familiar with decedent's signature, explaining that decedent "had a certain way he wrote" his last name. Lawson did not recognize decedent's signature on the third amendment, and testified decedent never mentioned a third amendment to him. Although the second amendment left all of the trust assets to Lawson, he believed that decedent would have wanted the assets to be distributed to his nieces and nephews. Lawson was under the impression that decedent simply wanted him to control the distribution of the assets, but not actually inherit them. Thus, Lawson opened a bank account with the intention to distribute all of the trust assets to decedent's nieces and nephews.

Ruth Holmes, a forensic handwriting and document examiner and an expert regarding handwriting, opined the signature on the third amendment did not belong to decedent. Holmes testified decedent had "a very unique way of signing his name . . . ." She identified eight differences between the signature on the third amendment and decedent's known signatures. Holmes opined, "with the highest degree of probability," that the third amendment was not signed by decedent.

After considering all of the testimony and evidence, the probate court found the third amendment invalid and denied Goines's petition. The probate court found that the third amendment had a glaring error in the notary block that Modi failed to notice. The court noted that Modi's declaration in support of Goines's petition also had an error that Modi failed to notice. On the other hand, the court found Lawson's testimony credible and Holmes's scientific testimony "compelling." The court acknowledged that the witnesses did not appear to have anything to gain from their testimony, but was "very troubled by the fact that this critical document has such a glaring error." The court entered an order denying Goines's petition, finding "through evidence provided and testimony, [decedent] did not sign the 3rd Amended Trust, and therefore, the 3rd Amended Trust will not be admitted." This appeal followed.

## II. ANALYSIS

Goines argues that the probate court abused its discretion because it failed to identify and apply an evidentiary standard of proof or statutory analysis and failed to make necessary factual determinations when denying her petition. We disagree.

"This Court reviews for an abuse of discretion a probate court's dispositional rulings and reviews for clear error the factual findings underlying a probate court's decision." *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018) (cleaned up). "An abuse of discretion occurs when the probate court chooses an outcome outside the range of reasonable and principled outcomes."

*Id.* (cleaned up). "A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id.* (cleaned up). We review de novo any statutory interpretation by the probate court. *Id.*

Goines first argues that the probate court failed to apply the proper statutory legal standard in determining the validity of the third amendment. The Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.* governs the amendment of a trust in Michigan. *In re Stillwell Trust*, 299 Mich App 289, 294; 829 NW2d 353 (2012). A settlor may amend a revocable trust by "substantially complying with a method provided in the terms of the trust." MCL 700.7602(3)(a). In this case, section 2.1 of the trust allowed for decedent to amend the trust in any respect during his lifetime, as long as the amendment was in writing.

As the petitioner, Goines had the burden of establishing the validity of the third amendment to the trust by a preponderance of the evidence. *In re Estate of Wojan*, 126 Mich App 50, 51; 337 NW2d 308 (1983). See also *In re Portus*, 325 Mich App at 392-393 ("When a statute fails to state the standard that probate courts are to use to establish a particular fact, the default standard in civil cases—preponderance of the evidence—applies."). Preponderance of the evidence means "such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008).

Throughout the probate proceedings, Goines maintained that the preponderance of the evidence standard applied in determining whether the third amendment was valid, which Lawton did not dispute.[2] On appeal, Goines offers no evidence the trial court incorrectly applied the preponderance of the evidence standard beyond her disagreement with the trial court's decision, and seemingly asserts because the trial court did not explicitly state the standard, it failed to apply one. Given that that standard of proof was undisputed, we cannot conclude that the probate court's failure to explicitly state the standard of proof was "outside the range of reasonable and principled outcomes." See *In re Portus*, 325 Mich App at 381. Further, Goines offers no authority that a court's failure to announce the standard, where the standard is undisputed, amounts to an abuse of discretion.

Under the preponderance of the evidence standard, the probate court only had to find that there was a greater probability that the third amendment was invalid after weighing all of the evidence. The probate court expressly weighed the evidence and testimony, found that Lawton and Holmes's testimony had more convincing force, and concluded that the third amendment was invalid. The probate court's conclusion was based on Holmes's opinion that "with the highest degree of probability," the signature on the third amendment was not written by decedent. The court also questioned Modi's credibility based on her failure to notice (1) a glaring error in the

---

[2] In the joint pretrial statement, Goines asserted the only "issue of fact to be litigated" was whether decedent, "by a preponderance of the evidence," signed the third amendment to the trust. At the outset of the evidentiary hearing, Goines's counsel argued, "What we're looking at here is whether or not . . . the Decedent[] signed the document. The standard is by a preponderance of the evidence . . . ." At the conclusion of the proofs, Goines's counsel asserted, "[T]he documents [is] verified by a preponderance of the evidence."

notary block on the third amendment and (2) the untruthful statement in her declaration that she was still a notary. The court further questioned the credibility of Mosser, Modi, and Goines, who each testified that the business relationship between decedent and Lawson had ended. The court found that "[t]he testimony . . . was clear that there's [sic] still exist some business relationships."

Goines's arguments amount to an attack on the probate court's credibility determinations of the various witnesses who testified in this matter. It is well-established that we "will defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *In re Conservatorship of Brody*, 321 Mich App 332, 336; 909 NW2d 849 (2017). See also MCR 2.613(C) ("[R]egard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it."). We are not left with a "definite and firm conviction that a mistake has been made" with respect to the probate court's factual findings and the probate court's decision to invalidate the third amendment was not "outside the range of reasonable and principled outcomes." See *In re Portus*, 325 Mich App at 381.

Goines further argues that the probate court failed to make necessary factual determinations when denying her petition. In support of her argument, Goines relies on *In re Guardianship of Gerstler*, 324 Mich App 494, 510-511; 922 NW2d 168 (2018), wherein this Court found the probate court abused its discretion by failing to make factual findings required by MCL 700.5106(2). In this case, Goines relied on MCL 700.7402(1) and MCL 700.3407(1)(b) in support of her petition. Unlike the statute at issue in *In re Gerstler*, neither of the statutes cited by Goines explicitly require the probate court to make specific factual findings on the record before ruling. While the probate court's explanation was brief, the evidence supports the probate court's findings and we are not definitely and firmly convinced that a mistake has been made. Accordingly, we conclude that the probate court did not abuse its discretion by finding the third amendment invalid.

Affirmed.


/s/ Stephen L. Borrello
/s/ Michael J. Riordan
/s/ Sima G. Patel